

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| In re: | ) | Case No. 11-22297-C-7 |
|---|---|---|
| STANLEY CLAY RUTTER, | ) | Adversary No. 11-2344 |
| Debtor(s). | ) | |
| CINDY RUTTER, | ) | |
| Plaintiff(s), | ) | |
| v. | ) | |
| STANLEY CLAY RUTTER, | ) | |
| Defendant(s). | ) | |



FILED
AUG 12 2011
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

In this adversary proceeding prosecuted and defended by self-represented parties, the debtor's former spouse seeks to have a debt excepted from discharge under 11 U.S.C. § 523(a)(2) or, in the alternative, to have the discharge denied under § 727(a)(4)(A).

**JURISDICTION**

Subject-matter jurisdiction is founded on 28 U.S.C. § 1334(b). A proceeding to determine the dischargeability of a particular debt and to object to discharge is a core proceeding. 28 U.S.C. §§ 157(b)(2)(I) and (J). To the extent that this adversary proceeding may ever be determined to be noncore, the parties agreed that it may be heard and determined by a bankruptcy judge. 18 U.S.C. § 157(c)(2).

**FINDINGS OF FACT**

The plaintiff Cindy Rutter and the debtor Stanley Rutter are former spouses who divorced in 2004.

The debtor filed this chapter 7 case January 29, 2011. Although he has remarried, his current spouse is not a debtor in this case.

The debtor was represented by counsel in the parent bankruptcy case.

The debtor, on Schedule I, "Current Income of Individual Debtor," stated that his occupation is registered ultrasonographer, that he is employed by a named healthcare provider, and that his monthly gross wages, salary, and commissions total $1,746.33. On line 13 of Schedule I, "Other monthly income," the debtor reported $0.00 income, as if he had no other source of income. He also stated that his nonfiling spouse receives disability income of $987 per month. The combined average monthly income was stated on Schedules I and J as $2,570.83 per month.

On Schedule J, "Current Expenditures of Individual Debtor(s)," total monthly expenses were listed as $3,205. Monthly net income was given as $-634.17.

On the Statement of Financial Affairs, the debtor stated in the answer to question 1, "Income from employment or operation of business," that his income in 2010 was $23,980, 2009 $39,868, and 2008 $38,338, all said to be from the employer identified in Schedule I.

On the Statement of Financial Affairs, question No. 2, "Income other than from employment or operation of business," the

Case 11-02344   Filed 08/12/11   Doc 11

debtor answered $0.00 for 2010 and for 2009 and added that his nonfiling spouse, identified as "nfs," received $10,800 in disability payments in 2010. As that entry was made twice, the court infers that one entry was intended to be for 2009.

On Form B22A (Official Form 22A), "Chapter 7 Statement of Current Monthly Income and Means-Test Calculation," question No. 3, "Gross wages, salary, tips, bonuses, overtime, commissions," the debtor stated his monthly income as $1,746.33, the same as he reported on Schedule I.

On question No. 2 of Form B22A, "Marital/filing status," the debtor stated "Unmarried" even though he is married.

On question No. 4 of Form B22A, "Income from the operation of a business, profession or farm," the debtor reported $0.00.

The evidence adduced at trial established that the debtor receives income approximately equal to the income from his primary employer, i.e. an additional $1,750 per month, for services he renders performing sonograms for physicians in a medical group. The additional income is long-standing. The plaintiff testified that she did his billing for such services before they were divorced in 2004.

The debtor testified that he anticipates there may be some reduction in that second-source income in the future as a result of potential reduction in Medicare reimbursement rates. He did not, however, indicate that his second-source income would be eliminated. He testified that his primary employer "will not permit" him to work more than twenty hours per week.

When confronted with the proposition that his income was approximately double what he stated in Schedule I, Form B22A, and

1  the Statement of Financial Affairs, the debtor testified that he
2  gave all of that financial information to his attorney.
3       In August 2008, the debtor asked the plaintiff to assist him
4  in dealing with a credit card balance as to which there was a
5  high interest rate, for which assistance he would repay her.  She
6  agreed and transferred this balance of $10,310.95 from his
7  Capital One credit card to her Citibank credit card on which the
8  interest rate was zero.  No payments were made by debtor on that
9  debt to plaintiff.
10      In October 2008, the daughter of the plaintiff and step-
11 daughter of the debtor was married.  The debtor asked that the
12 plaintiff place his share of the wedding expenses on her credit
13 card.  Accordingly, $4,723.19 was placed on the plaintiff's Bank
14 of America credit card.  The debtor reimbursed the plaintiff in
15 full on account of the wedding expenses.
16      Copies of eight checks were admitted in evidence at the
17 instance of the debtor, who asserted they were payments on the
18 $10,310.95 debt.  The internal information on the checks,
19 including a notation "B of A," are more consistent with the
20 plaintiff's testimony (which the court believed) that the checks
21 were in payment of the wedding expenses.
22      In 2010, the plaintiff commenced an action in the Superior
23 Court of California, Small Claims Division, Contra Costa County,
24 as Case No. PSC10-0729, seeking to recover the small claims
25 jurisdictional limit of $7,500 from the debtor on account of the
26 $10,310.95 balance transfer.  She explained that she elected
27 small claims court because she could not afford a lawyer in order
28 to seek the full amount owed.  Judgment was entered in favor of

plaintiff January 5, 2011, against defendant in the amount of $7,500 principal and $140 costs. Eighteen days later the debtor filed this chapter 7 case.

On Schedule F, "Creditors Holding Unsecured Nonpriority Claims," the debtor listed the plaintiff as having a claim of $7,500 said to be "Incurred: 08/08" with the "Consideration: Personal Loan" and the explanation that the "Debt incurred from daughter['s] wedding."

At the time that the debtor signed and verified the petition, schedules, and Statement of Financial Affairs in this chapter 7 case, the debtor knew that he was understating his monthly income by approximately $1,750. Furthermore, he knew that he had income from sources other than his primary employer, notwithstanding that he stated that there was no such income.

The plaintiff filed a proof of claim together with a letter, which the court construed to be a complaint in which the plaintiff asserted that the $10,310.95 loan was obtained by fraud ("he intentionally defrauded me") and that he had made false oaths ("he has lied regarding his income and employment"). The plaintiff's letter also asserted that the debtor's explanation on Schedule F linking the debt to their daughter's wedding was "completely false." Trial of the adversary proceeding occurred on August 10, 2011, before the undersigned.

### CONCLUSIONS OF LAW

The first question is whether the judgment debt for $7,640 awarded by the Contra Costa County Small Claims Court should be excepted from discharge under § 523(a)(2)(A) as having been

1 obtained by fraud. The essential elements in this circuit are
2 that the debtor made a material representation, that the
3 representation was false, that debtor knew that the
4 representation was false, that debtor's intention and purpose in
5 making the representation was to deceive the creditor, that the
6 creditor justifiably relied on the representation, and that the
7 creditor sustained loss or damage as the proximate result of the
8 representation having been made. <u>Eugene Parks Law Corp. Defined
9 Benefit Plan v. Kirsh (In re Kirsh)</u>, 973 F.2d 1454, 1457-60 (9th
10 Cir. 1992).
11     The plaintiff has the burden of proof, by a preponderance of
12 the evidence, to establish each of the aforesaid elements.
13 Accepting that the circumstances surrounding the August 2008 loan
14 by way of balance transfer of $10,310.95 constituted a
15 representation of intention to repay the amount borrowed, the
16 court is not persuaded by a preponderance of the evidence that at
17 the time the representation was made it was false. Nor is the
18 court persuaded by a preponderance of the evidence that the
19 debtor's intention in making the representation was with the
20 intent to deceive plaintiff. It follows that, regardless of the
21 other essential elements, the judgment debt does not qualify for
22 exception from discharge under § 523(a)(2). Accordingly,
23 judgment will be entered for debtor/defendant on that count.
24     The question whether to deny the discharge pursuant to
25 § 727(a)(4)(A) requires proof by a preponderance of the evidence
26 of the making of a false statement or account. In construing
27 this requirement, there has been recognized that there also must
28 be some materiality in any inaccurate statement. Thus, the

elements to be established for denial of discharge under § 722(a)(4)(A) are: (1) that the debtor made a false oath in connection with the case; (2) that the oath related to a material fact; (3) that the oath was made knowingly; and (4) that the oath was made fraudulently. Roberts v. Erhard (In re Erhard), 331 B.R. 876, 882 (9th Cir. BAP), aff'd, 241 Fed. App'x 420 (9th Cir. 2005).

The inaccurate statement on Schedule F indicating that the judgment debt owed to the plaintiff was on account of their daughter's wedding instead of on account of the balance transfer is not material within the meaning of § 727(a)(4)(A). While not true, nothing of consequence depended on it, and nobody was likely to be misled.

The court, however, is persuaded that the understatements of income on Schedule I and questions 1 and 2 of the Statement of Financial Affairs are material. The calculation on Schedule J reflects that the debtor's monthly net income is $-634.17. If the true income had been revealed, the debtor's monthly net income on Schedule J would have been on the order of $500 per month, if not more, rather than a negative number. Independent of whether the chapter 7 means test applies, monthly net income of $500 may justify a motion under 11 U.S.C. § 707(b) to require that bankruptcy relief for the debtor be limited to relief under a chapter other than chapter 7, i.e. chapter 13. It is now too late for the United States trustee or a creditor to pursue the question whether the case may constitute a substantial abuse of chapter 7 within the meaning of § 707(b). Had the true facts been revealed, the outcome might have been different. From this,

it follows that the statements, which were made in the case, related to material facts.

The court is also persuaded that the debtor knew of the existence of the income he was not revealing in his chapter 7 case. It defies credulity that an item of income that constitutes approximately half of one's income is something that would be overlooked. The court is persuaded that this had been an important item of income for the debtor for many years; the court believed the plaintiff's testimony that she did his billing for such work during their marriage. The court is persuaded by a preponderance of the evidence that the omission of the income was done knowingly within the meaning of § 727(a)(4)(A).

Similarly, the court is persuaded that the omission and misstatement of income constitute fraudulent statements. In this respect, the court is persuaded by a preponderance of the evidence that the debtor intended to mislead the trustee and parties in interest as to the true state of his income so that there would be no difficulties in him obtaining a chapter 7 discharge.

The defense implicit in the debtor's testimony that he gave all his financial information to his attorney does not absolve him from the consequences of false oath under § 727(a)(4)(A). Assuming, without deciding, that the debtor provided the financial information to his lawyer, the debtor is required to verify the petition and schedules on his own account, which means that he takes responsibility, as a matter of law, for the accuracy of the factual information contained in them. He could not, in good faith, have forgotten about one-half of his income.

First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339, 1343 (9th Cir. 1986); Creative Recreational Sys., Inc. v. Rice (In re Rice), 109 B.R. 405, 408-09 (Bankr. E.D. Cal. 1989); aff'd mem., 126 B.R. 822 (9th Cir. BAP 1991). Second, it is settled that the misdeeds of a lawyer are visited upon the client. Pioneer Inv. Servs. v. Brunswick Assocs. Limited P'ship (In re Pioneer Inv. Servs.), 507 U.S. 380, 396 (1993); United States v. Boyle, 469 U.S. 241 (1985); Link v. Wabash R. Co., 370 U.S. 626, 633 (1962).

In sum, the plaintiff has established by a preponderance of the evidence that the debtor made a knowing and fraudulent false oath in this case within the meaning of § 727(a)(4)(A). Hence, discharge pursuant to § 727(a) will be denied.

In making this decision to deny the chapter 7 discharge, the court is mindful that denial of discharge is regarded as a drastic remedy not cavalierly to be imposed. While it often is said that § 727 is construed liberally in favor of debtors, the Supreme Court has reminded us that the standard of proof is preponderance of evidence. Grogan v. Garner, 498 U.S. 279, 289 (1991). Nor does denial of a chapter 7 discharge operate to prevent the debtor from obtaining a chapter 13 discharge. Compare 11 U.S.C. § 1328(a)(2), with 11 U.S.C. § 523(a)(10).

An appropriate judgment will issue.

Dated: August 12, 2011.

_____
UNITED STATES BANKRUPTCY JUDGE

Case 11-02344    Filed 08/12/11    Doc 11

## CERTIFICATE OF SERVICE

On the date indicated below, I served a true and correct copy(ies) of the attached document by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed and by depositing said envelope in the United States mail or by placing said copy(ies) into an interoffice delivery receptacle located in the Clerk's Office.

Cindy Rutter
PO Box 4671
Oceanside, CA 92052

Stanley Rutter
1350 Cory Lane
Manteca, CA 95336

Scott D. Mitchell
1231 8th St #900
Modesto, CA 95354

Office of the United States Trustee
501 I Street
Sacramento, CA 95814

Gary Farrar
PO Box 576097
Modesto, CA 95357

Dated: 8-15-11

_____
DEPUTY CLERK